

## OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Tom DeBerry, Member
State Board of Control
Austin, Texas

Dear Mr. DeBerry:          Opinion No. O-2922

                    Re: Legal liability of one con-
                        tracting to furnish materials
                        or commodities to the State,
                        where such furnishing is
                        thereafter made illegal by
                        law.

        Your very interesting inquiry for an opinion
is as follows:

        "Enclosed is a recent letter from the
        Pittsburgh Plate Glass Company, which
        firm at present has the contract with
        the State of Texas for the furnishing
        of Aluminum Powder for the State's
        needs. This letter is self-explanatory.
        Also enclosed is the bid proposal which
        was made by this firm and accepted by
        the Board of Control, constituting the
        contract between the Pittsburgh Plate
        Glass Company and the State Board of
        Control.

        "In the light of this situation, and
        in view of the fact that like situa-
        tions are arising frequently where the
        Federal Government imposes priorities
        on various materials for use in National
        Defense projects, thus making it impos-
        sible for the State's contractor to fur-
        nish us with such materials, your valued
        opinion is respectfully requested as to
        what legal obligation to furnish the ma-
        terials is imposed upon the contractor

under the contract referred to above.
If, under these circumstances, there
exists such an obligation, what recourse
does this Board have in enforcing it?"

The letter of the Pittsburgh Plate Glass Company to which you refer is as follows:

"We are sure that you have been notified by various manufacturers of Aluminum products of the priority use of Aluminum in Industries other than National Defense Projects.

"The OPM recently wrote us to send in an inventory of all Aluminum Powder and Paste we had on hand. Several days later they wrote us to ship this material to various building projects under construction.

"Some of the Aluminum we had on hand was to be used in filling order on our Contract with the State Board of Control. Due to this National demand we will not be able to fulfill our contract, but we are sure you can appreciate our position in this matter.

"If you think it advisable, we shall be glad to notify each Institution by mail to the effect that we will not be able to make further shipments of Aluminum Powder to them."

The law is just and will not do an injustice between parties to a contract by compelling them to a performance, where the law itself has supervened to make the performance impossible or illegal. Such a contract upon the law's supervening to prevent its performance is at an end, without further obligation or liability upon the part of either party thereto.

"Performance is not excused by the fact that the contract could not legally be performed under the law as it existed when the contract was made, for the parties are presumed to know the law; but performance is excused where it is prevented by laws subsequently passed." (Emphasis supplied) 10 Tex. Jur., p. 439, Sec. 254.

"No contract can properly be carried into effect which was originally made contrary to the provisions of law or <u>which, being made consistently with the rules of law at the time, has become illegal in virtue of some subsequent law. Non-performance is excused where performance is rendered impossible by the law</u>. (Emphasis supplied) One of the conditions implied in a contract is that the promissor shall not be compelled to perform if the performance is rendered impossible by an act of the law. A contract which is legal in its inception but becomes illegal by subsequent statutory enactment is wholly terminated as soon as the statute takes effect, even though the time specified for its performance has not yet fully expired, and no action can be maintained by either party for failure to perform the obligations of the contract after the illegality has attached." -- 12 Am. Jur. p. 654, Sec. 379.

These texts merely announce the well-recognized rule governing the liability of parties to a contract.

The act of the government in imposing upon aluminum a governmental priority making the fulfillment of the contract impossible is undoubtedly such supervening law as brings the case within the rule above defined.

The Board contract with Pittsburgh Plate Glass Company, if the Government priority has the effect above indicated, and we assume it does, is at an end without further obligation or liability upon either party. Its original binding force has been abrogated by a vis major -- the Governmental fiat itself.

Of course, there is full legal liability on the part of the State or the institution concerned for materials already delivered, but this liability itself is not perforce of the contract, but upon the principle of quantum meruit.

This opinion is based upon the assumption that the emergency orders of the Government have made delivery by the Pittsburgh Plate Glass Company legally impossible. If this assumption be not true, and the situation prompt-

ing the Company to advise you of its inability to supply the aluminum is merely one of difficulty in obtaining the commodity in the market, due to supply or unusual demands, whether by the Government or others, then the Company would not be absolved from its liability to supply the aluminum, for in the contract itself the Company bargained for the assumption of the risk of short supply and high prices. In such a situation the rights of the parties and the consequent liability of the Glass Company are fixed in the proposal to furnish and deliver, as follows:

> "If we fail or refuse for any cause to deliver goods, wares or merchandise, for which we have received contract to any institution upon proper order, within a reasonable length of time, then the State Board of Control reserves the right to purchase such material so rejected or material which we have failed to deliver, on the open market at the best possible price, and charge this person, firm or corporation with any difference in price over and above the contract figures."

So that, you are respectfully advised that your Board should acknowledge receipt of the Pittsburgh Plate Glass Company's letter, saying to the Company that in the event the Company fails or refuses for any cause to deliver the merchandise upon any proper order under the contract, within a reasonable length of time, then the State Board of Control will purchase such merchandise on the open market, at the best possible price, and charge the Pittsburgh Plate Glass Company with the difference, if any, in price, over and above the contract figures, as provided in the proposal upon which the contract was entered into; and, further, that whether or not the Company has been absolved from such liability by any act of the Government will be referred to the Attorney General of the State for his determination as the basis for an action upon the contract.

APPROVED JUL 17, 1941

FIRST ASSISTANT
ATTORNEY GENERAL
OS-WR

Very truly yours

ATTORNEY GENERAL OF TEXAS

By

Ocie Speer
Assistant

APPROVED
OPINION
COMMITTEE
BY BWB
CHAIRMAN